UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **DARVI HINOJOSA**, <br><br> Defendant. | **Case No.** 24-CR-00543-03-CR-H-KPE |

### GOVERNMENT'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

The Government respectfully requests that this Court deny Defendant's Motion to Revoke the Magistrate's Detention Order filed on January 15, 2026, and in support thereof offers the following:

### I. PROCEDURAL HISTORY

On October 24, 2024, a federal grand jury seated in Houston, Texas, returned an indictment charging Defendant and John Sblendorio with attempted murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(5) and 2; and using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. (D.E. 1.) The indictment alleges that Defendant and Sblendorio are both members of the Bandidos Outlaw Motorcycle Gang ("OMG") who participated in the attempted murder of a rival OMG member on June 3, 2023. (D.E. 1.). Defendant and Sblendorio were arrested on October 29, 2024, and appeared before the Honorable Yvonne Y. Ho, United States Magistrate Judge, Southern District of Texas. The Government moved for Defendant's detention, and he was temporarily detained pending a hearing on the Government's motion. (D.E. 15.)

On October 31, 2024, a detention hearing was held before Judge Ho, whereat the parties made arguments regarding Defendant's release from custody pending trial. The Government also elicited testimony from an investigating agent regarding Defendant's role as the shot-caller in the attempted murder of a rival gang member, suspected involvement in additional instances of gang-related violence, controlled purchases of cocaine from Defendant, and discovery of baggies, suspected cocaine,[1] and a scale at his residence upon arrest. Judge Ho issued a written order following the hearing finding, by clear and convincing evidence, that Defendant poses a danger to the community. (D.E. 22.) In reaching her decision to detain Defendant, Judge Ho noted the rebuttable presumption under 18 U.S.C. § 3142(e)(3). (D.E. 22.) That presumption is that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the defendant as required and the safety of any other person and the community." (D.E. 22.) Judge Ho found that the rebuttable presumption was applicable because there was probable cause to believe that Defendant committed a violation of 18 U.S.C. § 924(c), as charged in Count Two of the indictment. (D.E. 22.)

Judge Ho found that Defendant failed to rebut the presumption under section 3142(e) and detention was warranted on that basis alone. (D.E. 22.) That finding, however, did not end the Court's inquiry, and Judge Ho made additional findings of fact and law. Judge Ho considered the detention factors set forth in 18 U.S.C. § 3142(g) and specifically concluded that the Government demonstrated Defendant is a threat to public safety by clear and convincing evidence. (D.E. 22.) Judge Ho noted various reasons for her ruling, including the weight of the evidence against Defendant, fact that he is subject to a lengthy period of incarceration if convicted, a history of

---

[1] Subsequent lab testing revealed that one bag of suspected cocaine was lidocaine. However, a second bag of suspected cocaine found in a room associated with Defendant's father was confirmed to be cocaine. As a professional courtesy, the Government notes that defense counsel received the positive laboratory report after filing the present motion, and the report's omission from the motion was not intended to mislead the Court.

2

violence or use of weapons, and prior violations while on supervision. (D.E. 22.) The Court further explained:

> Compelling evidence showed that Defendant Darvi Hinojosa, acting as an enforcer for the "Welcome to Hell" chapter of the Bandidos Outlaw Motorcycle Gang, directed and coordinated the attempted murder of a rival gang's member on a Houston/Pasadena roadway. The Court finds no condition or combination of conditions could adequately protect the community if he were released.
>
> Defendant has a position of authority within a local chapter of the Bandidos, a notorious gang that engages in criminal conduct. Their criminal activities include narcotics and firearm trafficking, assault, murder, and witness tampering. Within the Bandidos' paramilitary structure, Defendant carries the rank of Sergeant at Arms, responsible for enforcing the chapter's rules and handing out "discipline," including physical attacks.
>
> But the evidence of Defendant's danger goes beyond mere titles. First, as directly relevant to the pending charges, the Government's investigation revealed that Hinojosa instructed two Bandidos members (or prospective members), Steven Alms and John Sblendorio, to intercept and shoot a member of a rival gang, Brothers East (a/k/a "Beast"), in the early morning hours of June 3, 2023. This was supported by extensive cell-site data, coupled with details from call records and text messages. The victim was shot seven times and only miraculously survived.
>
> In addition, phone location and communication data showed that Defendant, while previously a probationary Bandidos member, was likely involved in a prior shooting on November 2, 2021, which killed one Beast member and seriously wounded another. Similarly, video evidence suggests that Defendant participated in an assault and robbery of numerous members of another motorcycle club (the Gray Beards) at a local bar. Indeed, Defendant's phone included photos of Gray Beards' vests ("cuts") that were taken off those individuals' bodies after the assault.
>
> Second, the Government also showed that Defendant is trafficking controlled substances. On numerous occasions, Defendant sold cocaine, as captured through surveillance by law enforcement and confirmed through Defendant's text messages. Distributing illicit substances only underscores the danger posed by Defendant's release. Defendant's lack of prior criminal history does not override his engagement in violent and dangerous conduct.
>
> Given all this evidence, the Court finds no condition or combination of conditions would adequately protect the public if Defendant were released. To the contrary, a search of Defendant's residence following his arrest on federal charges found a bag of cocaine in his room. That clearly violated his state court bond. Defendant's disregard of state-court release conditions makes it unlikely he would comply with any conditions of federal release. Moreover, returning Defendant to live at his

> residence is not an option. The case agent testified that Defendant's father, who lives with Defendant, belongs to a Bandidos support club and is also dealing drugs.

(D.E. 22.) Based on the foregoing, Judge Ho ordered Defendant detained pending trial. (D.E. 22.)

On February 11, 2025, a federal grand jury seated in Houston, Texas, returned a superseding indictment charging Defendant with the additional crimes of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846; and three counts of possession with intent to distribute and distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (D.E. 67.) Defendant appeared for an arraignment on the superseding indictment on February 26, 2025, and was remanded to custody following the hearing. (D.E. 75.)

On January 15, 2026, Defendant filed a Motion to Revoke the Magistrate's Detention Order, arguing that the suspected cocaine found in his possession upon arrest was determined to be lidocaine, and therefore Judge Ho's decision detaining him must be overturned. (D.E. 330.) For the following reasons, Defendant's motion should be denied.

## II. ANALYSIS

The Court should deny Defendant's motion because the change in circumstances here is not a sufficiently compelling reason to revisit Judge Ho's decision. "Under the Bail Reform Act, . . . a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citing 18 U.S.C. § 3142(e)). Subject to rebuttal, "when a 'judicial officer finds that there is probable cause to believe' that a defendant committed one of the crimes listed in section 3142(e)(3), there is a presumption in favor of detention." *Id*. "A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is

4

charged. Thus, when the Government presents an indictment including charges listed in section 3142(e)(3), it has fulfilled its burden to establish the presumption in favor of detention." *Id*. (citation omitted). In the present case, a grand jury returned an indictment charging Defendant with a violation of 18 U.S.C. § 924(c). Therefore, the statutory presumption applies.

"Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *Id*. at 946. In determining whether the Government has met this burden, courts must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id*. (citing 18 U.S.C. § 3142(g)). Danger to the community does not only refer to physical violence but extends to any likely conduct that will harm the community, including the potential for continued criminal activity. *United States v. Tortora*, 922 F.2d 880 (1st Cir. 1990); *see also United States v. Boy*, 322 F. App'x 598, 600 (10th Cir. 2009) ("The concept of safety of the community under § 3142(e) is not limited to the danger of physical violence, but rather refers to the danger

5

that the defendant might engage in criminal activity to the detriment of the community." (internal quotation and citation omitted)).

Nearly all the facts Judge Ho cited when explaining her original decision to detain Defendant as a danger to the community are still present. As Judge Ho noted in her Order of Detention Pending Trial, the Government presented evidence that Defendant, "as an enforcer for the 'Welcome to Hell' chapter of the Bandidos Outlaw Motorcycle Gang, directed and coordinated the attempted murder of a rival gang's member on a Houston/Pasadena roadway." (D.E. 22 at 3.) Additionally, Judge Ho observed that, "[o]n numerous occasions, Defendant sold cocaine, as captured through surveillance by law enforcement and confirmed through Defendant's text messages," which Judge Ho found "only underscores the danger posed by Defendant's release." (D.E. 22 at 3.) Finally, Judge Ho also noted additional, probable instances of violence that Defendant participated in, including a murder of a rival in November 2021 and a subsequent violent robbery of rivals at a local bar. (D.E. 22 at 3.) These are the factors that were central to Judge Ho's detention decision and continue to demonstrate that Defendant represents a danger to the community by clear and convincing evidence.

In his motion seeking release from detention, Defendant focuses on the fact that suspected cocaine attributed to him during his original detention hearing was later found to be lidocaine. (D.E. 330.) While it is true that the suspected cocaine ultimately tested positive for lidocaine, cocaine *was* found in Defendant's residence, albeit in a room attributed to Defendant's father. This was confirmed by laboratory testing. Although this is, strictly speaking, a change in circumstances, it is not a significant one that materially affects the detention analysis. The evidence is still overwhelming that Defendant ordered and coordinated the attempted murder of a rival as a gang enforcer, likely participated in other instances of gang violence (including a successful gang-

related murder), and distributed cocaine on multiple occasions. Furthermore, following Judge Ho's original detention decision, a grand jury found probable cause to indict Defendant for multiple new crimes, including multiple drug trafficking offenses and racketeering conspiracy. It is these concerns that drove Judge Ho's decision to order Defendant detained pending trial and the fact that a small amount of cocaine found in Defendant's residence was lidocaine is without consequence.

Defendant was ordered detained as a dangerous, influential member of a violent motorcycle gang who has a history of violent behavior and drug trafficking. Regardless of whether cocaine was found in Defendant's residence, he represents a clear danger to public safety that cannot be reasonably mitigated by any condition or combination of conditions this Court can craft. Because the dangers Judge Ho described still exist, Defendant's detention remains warranted.

### III. CONCLUSION

WHEREFORE, based on the foregoing, the United States requests that the Court deny Defendant's motion without further hearing.

NICHOLAS J. GANJEI
United States Attorney
Southern District of Texas

By /s/ Byron H. Black
Byron H. Black
Assistant United States Attorney
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 567-9734
Email: Byron.Black@usdoj.gov

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a copy of the foregoing was delivered on January 26, 2026, to the CM-ECF system of the United States District Court for the Southern District of Texas for electronic delivery to all counsel of record.

                                                    Byron H. Black
                                                  Assistant United States Attorney