IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | No. 4:24-CR-543 (3) |
| DARVI HINOJOSA | § | |

MOTION TO SUPPRESS EVIDENCE
DERIVED FROM CELL TOWER SEARCH WARRANTS

TO THE HONORABLE KEITH ELLISON:

DARVI HINOJOSA, by and through his attorney, Charles Flood moves to suppress all evidence obtained directly or indirectly from three cell tower dump warrants, showing for cause as follows.

## I.     INTRODUCTION

On October 24, 2024, a grand jury returned an indictment charging Mr. Hinojosa and his co-defendants with attempted murder in aid of racketeering in violation of 18 U.S.C. 1959(a)(5) and 2; and using, carrying brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. 924(c)(1)(A)(iii) and 2, arising from an incident on June 3, 2023, known as the Winter Bar shooting. A Superseding Indictment was issued on February 11, 2025, followed by a Second Superseding Indictment on April 10, 2025. Mr. Hinojosa now stands charged with one count of racketeering conspiracy, four counts related to the Winters Bar incident, and four counts related to the distribution of approximately 54 grams of cocaine.

1

Mr. Hinojosa moves to suppress all evidence obtained directly or indirectly from three warrants authorizing the government to conduct cell tower dump searches for all cellular devices connected to multiple towers during defined time windows. These warrants were reverse location searches that compelled mass seizure of identifying and location data for every device connecting to multiple cellular towers during broad time periods, without individualized suspicion, probable cause, or particularity.

The Fourth Amendment does not permit modern day general warrants that allow the government to catalog the privacies of life through digital dragnet surveillance. *See Carpenter v. United States*, 585 U.S. 296, 305 (2018). In *United States v. Smith*, 110 F.4th 817 (5th Cir. 2024), the Fifth Circuit ruled that geofence warrants are modern day general warrants and are unconstitutional under the Fourth Amendment. The Fourth Circuit reached the same conclusion in *United States v. Chatrie*, explaining that geofence-style searches invert the Fourth Amendment by treating everyone in a geographic area as a suspect first, and narrowing later. 590 F. Supps 3d 901, 929-31 (E.D. Va. 2022), [aff'd on good-faith grounds, 2024 WL 3564577 (4th Cir. July 9, 2024)]. Cell tower dumps are functionally indistinguishable from geofence warrants, and in many respects broader. On January 16, 2026, the Supreme Court granted certiorari in *Chatrie*, signaling the seriousness of the constitutional issues.

The government here knew the alleged phone numbers of multiple targets but declined to limit the scope of its search, opting instead for a broad cell tower dump. The government seized the data of every person in the area, and only afterward attempted to develop suspicion. The information obtained from these searches must be suppressed.

## II.   THE WARRANTS AT ISSUE

The government obtained materially identical search warrants authorizing the four major cell phone carriers, AT&T, Verizon, Sprint and T-Mobile to disclose records for **all devices** that connected to any cell tower servicing near or related to the listed locations during specified timeframes:

1. Blue Bayou Cafe on November 2, 2021, for 3 hours, multiple towers, two locations (**Exhibit 1** – 4:22-mj-67 filed January 11, 2022)

2. Winters bar on June 2-3, 2023, over 5 hours, multiple towers, two locations (**Exhibit 2** - 4:23-mj-1655 filed September 18, 2023)

3. Bimboz Bar on February 23, 2023, for 3 hours, multiple towers, one location (**Exhibit 3** - 4:24-mc-5498 filed March 7, 2024)

To avoid violating the Court's Protective Order, the exhibits are being filed under seal. Each warrant required providers to disclose IMSI, IMEI, MSISDN, source and destination numbers, time and duration and type of communication, and cell-sector information revealing device location. None of the warrants identified a suspect device, phone number, or account number. None required minimization before disclosure. None imposed meaningful *ex ante* limits on law enforcement review.

## III.   STANDING

Mr. Hinojosa had a reasonable expectation of privacy in his historical cell site location information ("CSLI") and identifying cellular metadata. These are protected rights. The Supreme Court has held that "individuals have a reasonable expectation of privacy in the whole of their physical movements…" *Carpenter,* 585 U.S. at 310. Tower dump CSLI is even more sensitive because it reveals not only a person's movements but

also their associations, and location data of innocent third parties. "Accordingly, when the Government tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Id*. at 311-312. As the affidavit to the warrant state, "the records described in Attachment A will identify the cellular devices that were in the vicinity…". See **Exhibit A, Koncir Affidavit, ¶ 18**. Standing exists even if the government had not yet confirmed whether Mr. Hinojosa's device appears in the dump because the seizure itself is the injury.

## IV. THE WARRANTS VIOLATED THE FOURTH AMENDMENT

### A. The Warrants Were Unconstitutional General Warrants

In requesting a geofence warrant, "[l]aw enforcement simply specifies a location and a period of time, and after judicial approval, companies conduct sweeping searches of their location database and provide a list of cell phones and affiliated users found at or near a specific area during a given timeframe, both defined by law enforcement." *Smith* (quoting *Geofence Warrants and the Fourth Amendment,* 134 Har. L. Rev. at 2509 (2021)).

The cell tower dump warrants in this case present the exact sort of "general, exploratory rummaging" that is forbidden by the Fourth Amendment. *Smith, Id* at 32 citing *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). Here the warrants authorized seizure of all devices, not just those with any nexus to the crime. The government searched all devices near a location, without individualized probable cause, to later decide which devices were "suspicious." The affidavits expressly state that "government authorized persons will review the information to locate items described in Section II…" See **Exhibit A, Koncir Affidavit, ¶1**. This is precisely the constitutional inversion condemned in

4

*Chatrie*, where the court held that such location-based dragnets violate reasonable expectations of privacy. 590 F. Supp. 3d at 929-31. Here the warrants for cell tower dumps requested "**all records**…about all communications made using the cell tower during the corresponding timeframe(s)…" *See* **Exhibit A, Attachment B** (emphasis added).

As the Fifth Circuit stated in *Smith*: "The constitutionality of reverse warrants is highly suspect because, like general warrants that are prohibited by the Fourth Amendment, they permit searches of vast quantities of private, personal information without identifying any particular suspects or demonstrating probable cause to believe evidence will be located in the corporate databases they search." *Smith*, *Id*, at 834. The Fifth Circuit further held: "…[W]e hold that geofence warrants are general warrants categorically prohibited by the Fourth Amendment." *Id*.

**B. The Warrants Lacked Particularity**

The warrants failed to particularly describe any person, any device, any phone number, or any account to be searched, the devices to be seized and any meaningful limits on law enforcement discretion in reviewing or retaining data. Instead, they compelled the carriers to disclose all devices and all associated metadata, followed by unrestricted government review to identify "relevant" phones. This type of reverse warrant is precisely what was deemed unconstitutional in *Smith*, *Id* at 839

**C. The Warrants Were Not Supported by Probable Cause as to the Universe of Devices.**

Probable cause must exist before a search, not after it. The affidavits established, at most, that someone involved in a specific crime may have had a phone near a public

location. That does not justify searching every phone near that location. The affidavits do not articulate any reason to believe that every device near the public locations was connected to the alleged crimes. The Supreme Court has likewise rejected the notion that mere presence near a crime can justify search. See *Ybarra v. Illinois*, 444 U.S. 85 (1979) ("a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause").

### D. *Carpenter* Applies to Cell Tower Dumps.

The government cannot avoid *Carpenter* by relabeling CSLI as "non-content metadata." *Carpenter* explicitly recognized that historical locations data, regardless of how stored, invades a reasonable expectation of privacy because it enables the government to "travel back in time to retrace a person's whereabouts." *Id* at 312. Tower dump warrants do exactly that. They allow the government to reconstruct the movements of every device in the area, without individualized suspicion.

### V.   REMEDY - GOOD FAITH DOES NOT APPLY

Having found the warrants constitutionally deficient, the question is one of remedy. Law enforcement's conduct in this case defeats any claim to the *Leon* good-faith exception and the exclusionary rule should apply. Here, the agents already knew the names and phone numbers of numerous suspects in their investigation. Casting an unconstitutionally wide net was a deliberate choice. The government knew the warrants could have been narrowly tailored and deliberately chose not to do so. Task Force Officer Joshua Lyons, the co-case agent with Agent Keith Koncir, testified on February 10, 2026, that prior to

requesting these warrants, the government had already identified phone numbers attributed to Mr. Hinojosa:

> Q: So you requested all devices that connect to that tower, correct?
> A: From the major networks, yes, sir.
> Q  So it's not tied to an individual. It's tied to an area?
> A: It's our job once - - so when the records are returned they're just numbers and you either know the number or you don't because we had throughout our investigation of the Bandidos compiled numerous Bandidos numbers to different Bandidos members. We knew based off if we recognized it or we looked at what numbers that we already had on records and that's how we identified Mr. Hinojosa.
> Q: So you had the phone numbers of the alleged individuals before you asked for these cell tower dumps?
> A: We had -- we had numerous Bandidos phone numbers to our investigation.

**Rough transcript of motion to revoke Hinojosa's detention order.** [1]

The good faith exception does not apply where officers "mislead the magistrate," "recklessly disregard the truth," or seek warrants "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984). The officer's actions of omitting to tell the magistrate that they had already identified numerous Bandido members amounts to at best a clearly reckless intent to mislead the magistrate. It is this deliberate conduct by law enforcement that mandates exclusion of the fruits of these cell tower dumps. "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the benefits of exclusion tend to outweigh the costs. *Davis v. United States*, 464 U.S. 229 (2011) *citing Herring v. United States*, 555 U.S. 135, 144 (2009). Because the government knowingly sought warrants broader than necessary, withheld known information, and used

---

[1] Hinojosa has ordered the official transcript. The rough transcript is cited solely for the convenience of the Court. Hinojosa recognizes that the citation is subject to revisions.

7

reverse location techniques in a manner the Fifth Circuit has deemed unconstitutional, the good faith exception does not apply.

## VI. CONCLUSION

The cell tower dump warrants at issue authorized digital dragnets that violate the core protections of the Fourth Amendment. All evidence derived from these unconstitutional searches must be suppressed.

WHEREFORE, Mr. Hinojosa respectfully requests that this Court hold an evidentiary hearing and, after such hearing, suppress all evidence obtained directly or indirectly from the warrants and grant such further relief as the Court deems just and proper.

Respectfully Submitted,

*/s/ Charles Flood*
Charles Flood
FLOOD & FLOOD
914 Preston at Main, Suite 800
Houston, TX 77002
(713) 223-8877
Email: charles@floodandflood.com
Federal I.D. No. 22508

## CERTIFICATE OF CONFERENCE

Counsel has not conferred with U.S. Attorney Byron Black but based on the government's litigation position, counsel believes the government is opposed to this motion.

*/s/ Charles Flood*
Charles Flood

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Charles Flood*
Charles Flood