IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:24-CR-543 (3) |
| | § | |
| DARVI HINOJOSA | § | |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO
MOTION TO SUPPRESS EVIDENCE DERIVED FROM
<u>CELL TOWER SEARCH WARRANTS</u>**

Darvi Hinojosa files this this reply to the government's opposition to defendant's motion to suppress evidence derived from three cell tower search warrants [ECF 385]. The government's opposition rest on three premises, each flawed: (1) that *Carpenter* does not apply to tower-dumps; (2) that *Smith* is limited to Google geofence; and (3) that the good faith exception saves these warrants.

## I.    The Government Misstates *Carpenter* and the Standing Analysis.

The government argues that *Carpenter* [1] is "narrow" and protects only "long term, comprehensive" location information. That is not what *Carpenter* held; "…[W]e hold that an individual maintains legitimate expectation of privacy in the record of his physical movements as captured through CSLI." *Id.* at 310. *Carpenter* held that the CSLI data is "qualitatively different" from traditional types of police surveillance because it is "comprehensive," "retrospective," "intimate," and "easy" to access for investigators. *Id.* at 309–312. It is comprehensive because it provides "near perfect surveillance, as if [the

---

[1] *Carpenter v. United States*, 585 U.S. 296 (2018)

government] had attached an ankle monitor to the phone's user." *Id*. at 312.  This information is provided automatically from the phone's own processes and generates it frequently enough that it "faithfully follows" cell phone users and its location information includes whether the device was located in "private residences, doctor's offices, political headquarters, and other potentially revealing locales." *Id*. at 311.  This surveillance of hundreds or thousands of people at once  is unlike anything the Fourth Amendment has faced.

The government's negative implication that because *Carpenter* did not expressly decide tower dumps, they are therefore unprotected is legally unsound.  The Court said only that tower dumps were "not before us", not that they fall outside the Fourth Amendment.  585 U.S. at 316.  Silence is not authorization.

The tower dumps here are far more intrusive than the government admits.  The government characterizes the duration of the warrants as "very short" and not comprehensive, but the warrants covered multiple towers, across multiple locations, for muti-hour windows and captured every device that connected to any sector.  This is not a single ping.  It is a reconstruction of presence and association at specific times and places, precisely the type of near perfect surveillance *Carpenter* warned against.

Standing exists because the government seized Mr. Hinojosa's data.  The government concedes that devices associated with Mr. Hinojosa appeared in two of three tower dumps.  That alone covers standing. As to the third dump, standing exists because the government used cross-correlation from other dumps to advance that investigation, and the dumps were part of a single investigative sequence.  The injury is the seizure.

### II.      The Search and Seizure violated the Fourth Amendment

### a.  The Government misconstrues what data the search warrants sought.

A cell phone continuously provides data to a cell phone tower without any input by the user at all. As *Carpenter* artfully stated, this data is provided "by dint of its operation, without any affirmative act on the part of the user beyond powering up." *Id.* at 315.   In the search warrant applications, the Government acknowledges this; yet in their Opposition [Doc. 385] they run from it. As one warrant application states: "Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and *other data*. (ECF 355 – Exhibit 1, Bates No. USA 100933) (emphasis added).  It is this "other data" which is obviously problematic. That warrant sought "…*all records and other information* (not including the contents of communications) about all communications made using the cell tower…" *Id.* at Bates No.  USA 100938) (emphasis added).   Despite the overwhelming breadth of the data sought, the Government confusingly, and incorrectly, states that the information requested "will not place devices inside or outside of specific residences, buildings, or vehicles" and that the data sought "cannot track the movement of a device…"  This is patently false.  The "other information" transmitted by the device to the tower is CSLI and does just that.   The data sought and the data obtained contained specific global positioning data that allows the Government to see where that device is located, frequently with accuracy within a few meters.

**b. *Smith* Applies Because the Constitutional Defect Is the Reverse Location Dragnet, Not the Database Used.**

The government's attempt to cabin *Smith* to Google's geofence warrant fails for three reasons.  First, *Smith's* holding is about structure, not provider. The Fifth Circuit condemned reverse-location warrants because they search first, narrow later, lack individualized probable cause, lack particularity and sweep vast numbers of people.  *United States v. Smith* 110 F.4th 817 at 823-34.  Tower dumps share all these defects.  In fact, they are broader.  They capture every device that connects to a tower, not just Google users. They sweep in people far outside the physical scene due to tower range. They reveal associations, movements, and presence at sensitive locations.  And unlike Google location history, users cannot opt-out of tower-sector logging. The government's less precise argument is backwards.  Less precision means more innocent people swept in, which is the essence of a general warrant and what the core of the particularity requirement forbids. Second, the government's own affidavits confirm these were reverse location warrants. Each warrant demanded: "all records and other information… for all devices…during the corresponding timeframe(s)."  This is the exact structure *Smith* condemned.  Third, the government's "Sensorvault" distinction is irrelevant. The Fifth Circuit's concerns was not Google's technology; it was the dragnet nature of the search.  Whether the government queries Sensorvault or AT&T's tower logs, the Constitution defect is identical, a suspicionless mass seizure of location data from everyone in the area.

4

### III.   The Warrants Lack Probable Cause and Particularity.

The government's probable cause argument boils down to: "Bandidos were violent, so we could search everyone's phone near a scene." That is not the law. The Supreme Court has repeatedly rejected guilt by association and guilty by proximity. *Ybarra v. Illinois*, 444 U.S. 85 (1979). The affidavits here establish only that someone involved in the crime may have had a phone. The leap from "some Bandidos likely involved" to seizing data for all devices in the area for hours is classic general warrant logic. That does not justify searching every phone in the area.

The warrants identified no person, no device, no account, and no limiting principle. The government claims the warrants were "particular" because they listed: tower address, dates and times. But the Fourth Amendment requires particularity as to the persons or things to be seized, not the physical location of the database. These warrants authorized seizure of all "all records or other information" – that included all identifiers, all metadata, all tower-sector location data, with no minimization and no ex-ante filtering. This is the definition of a general warrant. The tower dump warrants in this case are also overbroad because they target multiple wireless providers without probable cause that any one of them is in possession of relevant CSLI evidence. The Fourth Amendment requires probable cause that the evidence to be seized will be found in the place to be searched. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 551 (1978). Here, this means that the government must have probable cause that evidence of the specified crimes is in the possession of the service provider(s) they intend to seize the data from. *See United States v. Fuentes*, Case No. CR-21-358-RAW at \*24 (E.D. Ok. 2024), *adopted*, *United States v. Fuentes*,

2025 WL 484628 (E.D. Ok. 2025) (suppressing, in part, because enforcement made "absolutely no showing in the Affidavit for Search warrant that Google held evidence of a crime in its Location History data since it had no idea who committed the crime."); *In re Search of Info. that is Stored at Premises Controlled by Google* , 542 F. Supp. 3d 1153, 1156 (D. Kan. 2021).  Here investigators had no idea which, if any, phone company might be in possession of CSLI data linked to an unknown suspect. In short, the government sought warrants for four wireless providers in the area because they had probable cause for none of them. It is like serving warrants on every bank in the county on the theory that one of them may have the proceeds of a crime in an unknown safe deposit box.

The government then pivots away from *Carpenter* and "expectation of privacy" issues and then states that tower dump warrants are "more akin to seizing property." Doc. 385 at 16.  This pivot does not help the Government. The government tries to import *Zurcher's* third-party premises rationale to bulk CSLI, but CSLI uniquely intrudes on individuals' locational privacy.  *Zurcher* cannot be used to sidestep *Carpenter's* privacy treatment of CSLI, and that particularization must attach to the "things to be seized."  There is nothing in these warrants which shows particularity as to each cell service provider and particularity as to each user of that provider.  There is no particularity as to each individual user and the government's pivot to a property search analysis also fails.

The government also relies on *James'* 90-minute window near robbery sites as "narrow and precise".  Here windows extend to three to six hours and include "all towers" serving more than one site.  Particularity in this context requires provider side filtering

against pre-known numbers or at least a two-step protocol with court-approved minimization.  The absence of any such guardrails violates the particularity clause.

### IV.    The Good Faith Exception Does Not Apply.

Even if the warrants were defective (they were), the government cannot rely on *Leon*.  Agents deliberately declined to narrow despite knowing target numbers. As the government's opposition clearly acknowledges: "since April 2019, [he] had compiled the cellular phone numbers of numerous Bandidos and members of Bandidos' support club members[…]" Doc. 385 at 14.  TFO Lyons echoed this when he testified that agents had numerous Bandidos phone numbers, including numbers attributed to defendant, before seeking any tower-dump warrants, yet still requested ALL devices from numerous carriers. This is not good faith. It is calculated and deliberate overbreadth.  Withholding known limiting information is a *Leon* violation.  Agents here knew they could target specific numbers; knew they could obtain targeted CSLI and failed to disclose that narrowing was possible.  They deliberately choose a general dragnet instead of a particular search.

### V.    CONCLUSION

The government's opposition does not cure the constitutional defects in these warrants.   They were reverse location dragnets lacking probable cause, lacking particularity, and obtained only after agents deliberately declined to narrow scope despite knowing target numbers.  The good faith exception does not apply. All evidence derived from these warrants must be suppressed.

7

Respectfully Submitted,


/s/ Charles Flood
Charles Flood
FLOOD & FLOOD
914 Preston at Main, Suite 800
Houston, TX 77002
(713) 223-8877
Email: charles@floodandflood.com
Federal I.D. No. 22508


## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.


/s/ Charles Flood
Charles Flood